UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| MOHAMMED A.H.A.  OMRAN | CIVIL ACTION NO. 5:14-cv-3128 |
| VS. | SECTION P |
| | JUDGE TOM STAGG |
| DY. METREJEAN, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

SUPPLEMENTAL REPORT AND RECOMMENDATION

Pro se plaintiff Mohammed Ahmed Hassan Abdallah Omran, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 28, 2014. Plaintiff complained that he and his fellow Muslims were insulted and humiliated by Dy. Metrejean on September 9 and 22, 2014. He sued Metrejean, and Caddo Parish Sheriff Steve Prator, Commander Robert Wyche, and Sgt. Robinson and prayed for declaratory judgment, injunctive relief, and compensatory and punitive damages totaling $100,000.

On January 13, 2015, the undersigned recommended that the complaint be dismissed as frivolous based upon the following the facts gleaned from plaintiff's complaint and set forth in the Report and Recommendation:

> On September 9, 2014, plaintiff and other Muslims set up a table in preparation to study the Quran. Dy. Metrejean approached the table and 'told us that next time we have to ask him permission first.' According to plaintiff, the Christians never ask for permission for Bible study during recreation time.  As a result, '[p]laintiff feels insulted and humiliated because of his religious beliefs.'  He claims that his grievances were erroneously denied and that the '... incident caused [him] to suffer mental and psychological distress, pain and anxiety.' He feels 'discriminated against and treated unfairly because of his religion.' Thereafter, on September 22, Metrejean instructed all of the inmates that no one (including the Christians) would be allowed to set up their scripture study tables without having first obtained permission; when plaintiff submitted a grievance on this incident,

Metrejean was ordered to allow both groups to set their tables. [Doc. 7]

Plaintiff provided copies of his grievances and the responses provided by CCC prison administrators [Doc. 1-1, pp. 1-5] , and these documents, referred to in the Report and Recommendation, established the following:

> Plaintiff submitted his first grievance on September 10, 2014; he recited the facts as noted above and asked for equal treatment and that one table be permanently set up and assigned for Muslim scripture study. On September 18, 2014 Corrections Officer Butler replied, '... Dep. Metrejean remembered you Mr. Omron requesting a table for Muslim practices to which he allowed. However, your request to have a table at regular times during normal recreational periods is granted.' Plaintiff rejected the first step response and appealed noting, 'I acknowledge that my request was granted but my question was why we, Muslims have to ask permission first before we set our table when the Christians do not have to ask permission...' On September 25, Commander Wyche rejected the appeal noting that the Deputy's request was not unreasonable and the claim of unfair treatment was invalid inasmuch as plaintiff was allowed to set up his table. Sgt. Robinson likewise rejected the Third Step appeal on the same basis. [Doc. 7, fn. 1]

On January 21, 2015, plaintiff filed an objection to the Report and Recommendation. Therein he made the following assertion – "The equal protection clause of the Fifth and Fourteenth Amendments prohibit discrimination against individuals on the basis of race, sex, or religion. Deputy Metrejean never demanded the Christians to ask for permission before setting up a Bible study table, while at the same time demanded that Muslims ask for permission before setting up a table to study the Quran..."

### *Law and Analysis*

#### *1. Practice of Religion*

Neither the original complaint [Doc. 1] nor the objection [Doc. 9] to the Report and Recommendation asserted a First Amendment free exercise of religion claim. Nevertheless, and

out of an abundance of precaution, to the extent such a claim is implied, dismissal is still recommended.

Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349.  The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice;  (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level;  (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77,

3

80 (5th Cir.1992).

It must be noted, that with regard to the first prong of the *Turner* test, plaintiff has never alleged that the defendant prison officials have prohibited him from practicing his religion. Plaintiff's right to study the Quran with his fellow Muslims was in no way hampered or impeded. In other words, to the extent that plaintiff now asserts a First Amendment claim, such claim should be dismissed as frivolous.

It may also be assumed that plaintiff intended to allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA)  [see 42 U.S.C. §2000cc *et seq*.].  RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that the challenged government action places a substantial burden on the exercise of his religion. Under RLUIPA, a "religious exercise"  includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id. §* 2000cc-5(7)(A).  Thus, religious services, religious

4

education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70.

The facts as alleged by plaintiff fail to establish that any burden, much less a substantial burden, was ever imposed on plaintiff.  Scripture study was neither prohibited nor curtailed.  *2.*
*Equal Protection*

Implied in his original complaint, and stated more explicitly in his objection, is plaintiff's claim that Dy. Metrejean violated plaintiff's right to equal protection. "To succeed in his equal protection claim [plaintiff] must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992) (citing *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)). Here, plaintiff's claim must fail because he cannot demonstrate discriminatory effect. Indeed, plaintiff was never denied the right to study the Quran and never denied the opportunity to set up a table for that purpose with his fellow Muslims.  Plaintiff's claim to the contrary is clearly frivolous.

Therefore,

**IT IS AGAIN RECOMMENDED** that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties

5

aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, February 3, 2015.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**

6